Our next case for argument is Leva v. Robbins. We are ready to hear from the appellant. Thank you Judge. If it pleases the court, my name is Robert Sykes. I want to talk for a moment about the importance of fences. Ten years ago, a young client of mine, a young woman, was southbound on I-15. I apologize for my cough. About 60 miles north of Salt Creek. Now you're in the courtroom. That's lovely. Okay. It doesn't really matter. We'd really like to hear from you. Okay. But she had a large bull in the road and it destroyed her car and gave her a significant brain injury. We got out there right away and found out that the fence had not been maintained. Now fences in rural areas prevent serious injury and death. We're talking today about qualified immunity and metaphorical fences. It's an important doctrine. It's a robust doctrine. It protects legitimate police functions. Fences are rules and without rules for qualified immunity, qualified immunity bulls get on the road. They can harm innocents and they can damage constitutional rights. Rule number one, qualified immunity is only for police work to protect their discretionary functions. In Elder v. Holloway, the U.S. Supreme Court said that the central purpose of qualified immunity was, quote, to protect them from undue interference with their duties. Citing Harlow v. Fitzgerald. In Butts v. Economy, the U.S. Supreme Court said it doesn't protect actions, quote, manifestly beyond their line of duty. This case in Furish the officers must act in furtherance of legitimate law enforcement interests. It also said there's no qualified immunity if a prank in this case must act in furtherance of legitimate law enforcement interests and there's no qualified immunity for a prank that furthers no public interest. Now in this case, Trooper Robbins, his own words, said that the stop was a joke between friends. On the harassment, he said, I thought she welcomed it. He was demoted by his own agency. He was removed from the assignment, demoted from sergeant down to trooper, two levels. And this case, this court said, in Val Verde v. Dodge in 2020, Judge Hartz and Carson were on that panel, talked about the calculus of reasonableness for qualified immunity, split-second judgments, tense, uncertain, rapidly evolving situations. You don't have that here and you don't need qualified immunity to protect an Let me let me see if I understand what you're what you're arguing here. Are you are you arguing that we don't even need to do a qualified immunity analysis, i.e. determine whether there was a violation of constitutional right, whether it was clearly established because there's no qualified immunity here because it wasn't a police function. That's what I'm saying, Judge. And that's what you've said. That's what this court has said in the first case. Well, if we don't, if we don't go there, can we go back to the requirements that Judge Carson has just voiced? That is what what is what is your violation of constitutional law? Okay. And what clearly established law do you have to support it? Good question. The the violation of constitutional law with the traffic stop first. Okay. By the way, I'd like to reserve three minutes if I could. Time is your own. Go ahead. All right. Thank you. The the traffic stop, we have 50 years at least of traffic stop law. It says that you cannot pull somebody over unless you have reasonable articulable suspicion. Okay. And that's pretty clear in the law. As far as the sexual harassment, the ongoing sexual harassment, that's pretty clear to a public official, an officer in this case, cannot harass a private citizen. So the constitutional violation on the first one is the Fourth Amendment. Fourth Amendment and 14th. And the 14th Amendment. And the 14th Amendment on the second on the second on sexual harassment, 14th Amendment. Now, I hope I've answered your question, Judge Carson. The the second fence I want to talk about is the no scavenger hunt fence. Now, the US Supreme Court has been very clear and hope versus peltzer. That quote, even novel factual circumstances, okay, can be the basis of liability. They quote, we expressly rejected the requirement that previous cases be fundamentally similar. This circuit in Casey versus city of federal heights, said the hope decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts. Okay. Now, the trial court in this case, found that the stop violated the Fourth Amendment. Very clear. I put that in the brief. He found that a reasonable jury could find that Heather was sexually harassed. Okay. But then he sent us on a scavenger hunt. And, and on page 23 of his decision, he wanted us to find for example, cases with quote, pre existing and ongoing relationship between the officer and the citizen, and an exchange of text messages to kind of concern the stop, both before and after the stop, and a different location for the stop then initially identified. Let's talk about the stop first. Did she consent to the stop at issue? No, no. Does she say in her complaint that she just did not consent to it? She did. She did. And their position was that Texas changed two hours before. Okay, on I 15 in Utah County, gave him the that he thought he that she had consented. And she didn't respond to the last text message. I put that in the brief. And she goes somewhere else does her business and comes back two hours later, your honors two hours later on a different road on a different location. And she's scared to death because the officer turns on his life. She doesn't know who it is. She has to pull over. She can't just ignore flashing lights. And then she said she was quote creeped out. When he showed up. How did he know where she was? She's a she's a single woman, single mother at home with three children. She's going home. And this officer pulls her over for no reason. Just a flirt. Now that was just asking a question about the text messages and the consent. Yes. Does she anywhere in that text string say? Yes, pull me over. I'm looking forward to seeing you be great if you pull me over. I mean, it seems to me at best the text string establishes that she didn't respond to him saying I'm going to pull you over. Yeah, she didn't respond. You're absolutely right. Absolutely right. And she didn't respond. And the problem. And no, she didn't welcome it. She didn't want it. The problem with this argument. When I go on a scavenger hunt, it allows bulls on the interstate at night. It validates harassers and rapists dream excuse. She welcomed it. It validates subjectivity. I thought she consented. Okay. Every woman if this decision comes down the way the defense wants it. Every woman, every woman will be at greater risk for harassment and abuse and worse. And it engenders great disrespect for the law. Is it your position that what we have to do is find that there's another case that says you can't pull someone over without reasonable suspicion? Or it's a constitutional violation? And that if we have that case that it's clearly established? That was the trial courts position. The trial court is I read you a minute ago, they wanted a case where that there's an ongoing relationship between the officer or some kind and exchange messages. That's on page 23. They want to be exact. I'm asking you sort of the opposite. Are you saying all we need to have is a case that says that a police officer can't pull someone over without real suspicion? No, that's far too general. What I'm saying is that the that the case law has to give fair warning. Fair warning. Well, what's your parents apparent? And there are lots of cases that say that, you know, for example, you said in 2020, state of smart versus city of Wichita. Our analysis is not a scavenger hunt for prior cases with precisely the same facts. A prior case need not be exactly parallel to the conduct here before the officials do have been on notice of established law. Okay, right. So my question is crucial. What case do you have that put them on notice? Okay. The on the on the traffic stop. Botero Aspina. I quoted that in the brief. Okay. It said and I'm going to just grab that real quickly. You can just you're running out of time here. Yeah. No, but but but but that said, you know, you can't pull somebody over. And your subjective reasons don't matter. They don't matter. Okay. And that case was argued. And on the sexual harassment, Johnson versus Martin 10th Circuit case, you know, let me let me let me focus since we were almost out of time. I want to focus on the sexual harassment outside of the traffic. So if you have two state employees working in an office together and one sexually harasses the other, is that a violation of the Constitution? Well, it could be. That's not this case. But but it certainly it certainly could be, especially if the the the state knew about it and tolerated it. That certainly would be. Well, I'm not talking about that. I'm talking about just the that would be for a offensive work environment, hostile work environment. But I think our cases indicate that if it's just one employee harassing another, there's not a violation unless there's some sort of supervisory relationship. So it's a matter. So what what's essential here, it seems to me, is that there be some sort of extra power, extra authority conferred on the harasser by state law. And that would be the case with the traffic stop. But I don't understand how it is with the other activity that you consider sexual harassment. He's not acting in that circumstance, that harassment. He's not acting as a police officer with law enforcement powers. He's acting as a contractor. It's two people who are who are one's the provider of services and one's a purchaser of services. And that's their relationship there. And I'm not aware of any cases saying maybe you can help me on this, saying that that provides the power imbalance that can justify that can support a constitutional claim for sex harassment. I respectfully disagree, Judge, with the way you phrase that. He has power over her. He he runs the heavy duty towing rotation. She's a secretary. Her job is to make sure they get their fair share of referrals. And and he can cut them off and and threaten to do it. That's that's the power. Well, but that's power only through contract. She could also say we're not going to provide you any towing services because you're a jerk. And that would that would not help him in his job at all. They wouldn't get these are these are twenty five thousand dollar tows. It's important. It's a very valuable contract to have. Yeah. And and it's also and they cost a lot because they're really important. That's right. When you have a contract relationship, we generally assume that there's bargaining power on each side. So I only have a few more seconds. The question is whether you have any cases where the authority is that conferred by contract. Every case I saw was either a supervisor of the employee or someone who had law enforcement power could deny a license or something like that. Johnson versus Martin. Do you have any cases in which the relationship involved is a contract relationship? Well, I'm not quite sure what you mean by contract relationship. The state supervised this towing is what it wasn't. There was a contract. Yes. But the state supervised your honor, supervised the heavy duty towing rotation. Let me just close to the towing company was just a contract relationship. I think I cited cases that do that. But in closing, let me just say Jones versus Hunt. I'm sorry. I didn't I didn't get that. I didn't see any you cited. But pages 27 to 40. But here's what Jones versus Hunt said about these cases. Implicit in the court's reasoning is the recognition that officials committing outrageous, yet sui generis constitutional violations ought not to shield their behavior behind qualified immunity simply because another official has not previously had the audacity to commit a similar transgression. And that's what we've got here. In that case, they hauled some little girl into an office at school and tried to persuade her to switch custody. And there were no cases on that. And I would just close by saying one more thing, as you said, in Bonn versus Tahlequah City and on December 1, 2020, Judge McHugh said, look, you could look at this different ways. But there are questions of fact where a reasonable jury could differ on how to view these facts. And at the very least, a reasonable jury could could differ on whether there was consent. Okay. And so I urge you, I think it's important for the women of our country and our circuit to have a good strong opinion. You cannot sexually harass a woman the way this officer did. Thank you. Thank you. We have your argument. Thank you. May it please the court, Cliff Peterson for Blaine Robbins. I would first begin by noting that this is labor's burden to show that the law was clearly established. And if I understood counsel a moment ago said conceded that it was not enough for someone just to cite case law saying you have to have probable cause to initiate a traffic stop. He said that's not enough. That's exactly what he gave the district court. He just gave general principles about probable cause to initiate a traffic stop. That's what he's done now on appeal. We submit that he's failed to meet his heavy burden to show that the law was, in fact, clearly established. Well, isn't I mean, isn't it really that simple? She's ruled over by this patrolman at night with his lights. She doesn't know it's him. It's not any place that they had talked about potentially is doing that. And he's pulling her over without reasonable suspicion, probable cause or anything. Well, with that, a flat out Fourth Amendment violation. Well, as the district court correctly noted, the law was not clearly established that consent cannot play into this analysis in the midst of a back and forth. She does not concede consent. She does not concede that fact. Well, I know that she's looking at this clearly established law question as though consent were a part of the question. Well, consent is part of the analysis, as the district court said, because if let's say let's change the facts just a little. Let's say the text said, come pull me. Let she says, come pull me over a reasonable officer. It would not be obvious. There's no case putting that officer on notice that he could not pull her over in response to a direct request, an explicit request. Please pull me over. I want to see you. Let's say she says that. What we're saying here is that the facts aren't that far removed. She may retcon the conversation, but objectively, she concedes that the text messages speak for themselves, that they speak, they say what they say. And that is, he says, I'll come. She says, I have a document. He says, can you give me the document? She says, stand by him on the freeway. He says, I'll pull you over. She gives him the mile marker number. She tells him what color car she is. And critically, the next day, he says, I thought you were sore at me for pulling you over. And she says, no, I think in the context of all these circumstances, she consented to that. And a reasonable officer would have seen that as consent to pull her over. And most importantly, there's not a case putting this beyond debate that every reasonable officer in the midst of this back and forth in this ongoing relationship would have known beyond debate that you could not consent to traffic stops. So we think let me stop you for me. So you concede there was no reasonable suspicion or probable cause to pull her over. Well, there was a cracked windshield. And that that's in the record. But he in his deposition, he said, in his deposition, he said that wasn't the reason he pulled over because he thought she consented. Yeah, he said it was a joke. Yeah, well, it could joke brought on by her consent, and then they talked. Okay, well, he didn't. That's not exactly what he said. Okay, hold on. So in the in the text messages, you've got to agree also, that there's no express agreement in those text messages that he can pull her over. Well, I think that objectively, there's enough that any any mistake in how that was interpreted as a reasonable mistake and qualified immunity should apply. Okay, well, you're you're dodging my question. Okay. So do you agree? Do you agree? It was not an express consent? I Yeah, I agree. I gave you the hypothetical. The hypothetical didn't happen. She didn't actually say please pull me over. Yeah, you're right. And so the next the next thing we got to look at then is was, was it close enough? Right, right. And so would you agree with me that at best, she was silent about whether he could pull her over or not whether she agreed that that was okay? Well, she could have not responded at all. But she did. She gave him my marker number. And she the next day said she wasn't sure about it. So I well, that's a sort of that sort of post hoc reasoning, isn't it? I mean, well, I think it shows just with what her attitude was the day before. Well, I think it's consistent. And I think it shows what she was thinking the day before. It's an objective record of what she was thinking at the time. Sure. I mean, a reasonable jury could determine that her statements from the next day were an attempt to try to get him to leave her alone and not, you know, continue pestering her is she just said, No, I'm not mad. Whereas if she said, Yeah, I'm pretty mad about it. Then he might have made attempts to contact her to make amends. Yes, Judge, that's correct. And the judge, in fact, specifically held that he held that there was a constant or that a reasonable juror, a jury could conclude that there was a First Amendment or Fourth Amendment violation. But that's a different question of whether qualified immunity applies, because qualified immunity applies if the law does not put him on notice. So if we agree, if we find if we if we conclude as a court, that there was no consent that you that at best, there's a fact issue as to consent. Do you agree there's no qualified immunity? No, because even if they're well, if you're going to go into the facts and basically, basically could make a make the conclusion, I think you have to still have to look at the possibility that an officer could objectively make a reasonable mistake. Could an objectively mistaken officer reasonably construe these text messages, even if a jury might conclude otherwise, but could, could a reasonable mistake happen such that this appears to be consent? I think that's all we need to get to qualified immunity. Okay, so you want us to make that determination as a matter of law, and not look at look at it and say, Wow, this seems tied up with facts here. Whether and I think more to the point is that even if she didn't expressly consent, the law was not did not put him on notice. The law was not clear. He does not know that he cannot pull people over at night on a highway with his lights on without probable cause or reasonable suspicion. He does not know that Judge Shelby said the consent is not clearly established. There's only three cases to talk about consent in the context of these kinds of traffic. But in answer to my question, does he not know that, that he cannot pull people over without reasonable suspicion? Well, because, but he also knows that the Supreme Court has said that consent, consensual encounters do not implicate the Fourth Amendment. That's a, that's an equally valid pillar of the law, you have, you have numerous statements by the Supreme Court and this circuit that consent does not implicate the Fourth Amendment. So here he is faced with apparent consent. And you have this other Hornbrook principles that you need probable cause to but if it's so it seems to me that that goes to the question of whether there was a constitutional violation. Well, it again, it's the burden of conceded. Well, that the judge found that a reasonable juror could conclude there was a constitutional violation. That's a different question. They still have their case. You don't raise it on appeal. Well, you don't get on appeal that there was no constitutional violation. Well, we don't we don't disagree that he the reasonable juror could conclude we believe if this goes to trial, that we would prevail that the juror would believe the more competent evidence that there was consent. So fair enough, but as part of this appeal, you've not argued that right, right constitutional violation, right? We're not challenging the district court's conclusion that reasonable juror construing the lap the construing the facts and the light most favorable to labor could find a violation. We're not we're not disputing that. Let me ask a question. I I thought you were arguing that this was a prank and it's not clearly established that a prank can't be a violation or is it's that close to have said a prank could be a violation, but you're not arguing that we're not. You're not arguing that there's sort of that the that the lack of clarity. No, we're not arguing about prank. No, we're we're. He did say it was a prank, but it was a prank based on consent. It was it wasn't just only that the officer could have reasonably thought that he had consent to do this and that the law did not put him on notice that he couldn't that basically consent cannot even factor at all to the calculus. There are three cases the district court noted. There were only three cases involving consent and traffic stops and labor did not even engage in those three cases on appeal. She didn't even take the district court to task and say, well, here's why this case applies or this one doesn't just so we believe that she's failed completely to meet her burden of persuasion on appeal by not engaging with the district courts. But even even on your theory that the officer could reasonably have interpreted her text messages as establishing consent. Isn't that a jury issue? Well, jury may ultimately be the ones to decide that. But what we're saying is, well, if the jury is the one that ultimately decide that. Well, well, I think let me try to phrase it this way, judge. When you have text messages that on their face, objective, objectively. Give implied consent that basically on their face, they objectively could be reasonably mistaken as consent, coupled with the fact that there is not existing case law saying that consent never factors into the equation. What we're saying is that given both of those, that this is not it's not doesn't there's not there's the first no materially similar circumstances and there's no obvious clarity. There's no case law that applies with obvious clarity to this situation. Does your honor have a question? Well, it just seems to me the jury should be the one to decide whether someone could reasonably interpret her texts as as constituting. Well, well, I understand. I understand the point. I appreciate that. I think also, though, that courts can also make a decision on reasonableness, too, and that these text messages speak for themselves and that we're faced with these text messages in an ongoing back and forth. This is not just something out of the blue. This is after the first ride along, which after she initiated contact after the first ride along a couple of weeks before. So there's an ongoing relationship, clearly. So do you contend that it was a valid police function for him to pull her over? Well, to the extent that Mr. Sykes is saying that there's that he was not acting under color of law in any of this and and therefore Section 1983 doesn't apply. I mean, I'm not sure exactly what point he's stipulating to in that regard. He was acting under color of law. That's what they alleged in the complaint. He was a police car. He turned the lights on. Yeah, he's a uniformed police officer. So he was exercising a discretionary police function and turning on his lights and pulling a making a traffic stop. Yes. You are a uniformed in a marked car with lights. You initiated a traffic stop. Yes. I guess I just sort of wonder how there could ever be consent to that. Well, I understand that if a police officer walks up to someone on the street and starts talking to them, that that could be a consensual encounter encounter. But a traffic stop seems remarkably different to me. And I'm just not sure that it's consistent that what consent is consistent with the traffic stop. I mean, I don't know, absent an express statement by the person being pulled over. Yeah, pull me over. And I'm still still not convinced. It's certainly not proper from a policing standpoint. Well, in the district court agreed with you, your honor. This report said, I don't think you I don't think you could ever really consent to a traffic stop. But it's a different question. Was it clearly established? The qualified immunity question is a different question. And if this court were to rule in this case, then, yes, it would be beyond debate that you could never consent to a traffic stop. But it's not beyond debate now, even with the district court's order. There's no appellate decision from the circuit. There's no Supreme Court decision. There's no consensus of the other circuits. And certainly Lava hasn't marshaled any cases from other circuits. She hasn't demonstrated case law from this circuit or the Supreme Court that would put the issue beyond debate. So that again, that's a separate question. You could you can have a constitutional violation, but the law was not clearly established. And so prospectively going forward, everyone's on notice. But qualified immunity still applies in this case because it was not clearly established at this time. So we again, we asked the court to find that Lava has not met her burden to show the law was clearly established. The district court got it right. We asked the court to affirm. And if there are no further questions, then we can argue the second claim. I can argue. Sure, Your Honor. The second claim again, the 14th Amendment claim. It's not obvious when you have a back and forth like this, when there's no evidence from her asking him to stop no evidence that she expressed that it was unwelcome. She never asked him to stop. She never told him it was unwanted. It was clearly a back and forth. She was initiating as much contact as he was. She was suggesting going to meals. She and she. So what what we have, the Johnson case is what counsels mentioned a moment ago. But the district court clearly distinguished the Johnson case is a magnitude difference of a misconduct in that case. This case pales in comparison. This is text messages. He hugged her one time. But unlike the Johnson case, there's no sexual assault. There's no asking for sexual favors in response to doing his job. There's no evidence that he sabotaged it. What a reasonable officer think that his conduct toward this individual was proper and well in his and within his duties. Yes. Yes. Because she never said stop. She never said it was unwanted on these. When you look at the text messages speak for themselves. It was yes, it was a whole lot of nonsense. We're getting down to she asked for it. Is that what you're saying? No, no, I'm not saying that. But she didn't say stop. She didn't. She actually initiated much of the conversation. She initiated some of the innuendo and the flirtatious conversations. And so we were our position is on a whole. This was a mutually engaging relationship, text exchange. And well, it seems, again, a lot like the first issue that it becomes a jury question as to who said what to whom and whether or not there was some kind of ongoing relationship and she consented to all of this. And we're here on qualified immunity, which to me seems like a bit of a stretch for this kind of a claim. Well, again, what what case put Officer Robbins on notice that this back and forth was unconstitutional in this context? And again, we say there is none district court said there was none. And labor hasn't shown it. And we asked this court to affirm. Thank you. Thank you. Let me thank the court for doing this now and not making us wait a year to meet in person. Thank you. You're welcome. Thank you for participating. The case is submitted. Thank you both.